UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

SHELLEY HAMMOND,

    PLAINTIFF,

v.

EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., PROCOLLECT, INC. AND TRANS UNION, LLC,

    DEFENDANTS.

Case No.:

***JURY TRIAL DEMANDED***

# COMPLAINT

Plaintiff Shelley Hammond ("Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc.,[1] and ProCollect, Inc. as follows:

## PRELIMINARY STATEMENT

1. This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA") and 15 U.S.C. §§ 1692, *et seq*. ("Fair Debt Collection Practices Act" or "FDCPA").

2. Plaintiff is a victim of identity theft, which is one of the "fastest growing white-collar crimes in the United States. *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 505, 2007 WL 4535267 (4th Cir. 2007). Surveys have shown "between 1998 and 2003, approximately 27.3

---

[1] Defendants Equifax Information Services, LLC and Experian Information Solutions, Inc. are referred to collectively as the "CRA Defendants."

million adults discovered they were victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone." *Id.*

3. Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).

4. Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5. On December 4, 2003, President George W. Bush signed into law the Fair and Accurate Credit Transactions Act ("FACTA").[2] This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers can better protect themselves and their families.[3]

6. The stated purpose of FACTA is "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes."[4]

---

[3] https://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html Last visited November 2, 2021.

[4] https://www.govinfo.gov/content/pkg/PLAW-108publ159/pdf/PLAW-108publ159.pdf Last visited November 2, 2021.

7. In 2004, according to the Federal Bureau of Investigation, "[i] Identity theft is one of the fastest growing crimes in the U.S., claiming more than 10 million victims a year."[5]

8. Between 2000 and 2014, the Federal Trade Commission ("FTC") identified identity theft as the number one complaint made to the FTC.[6] Identity theft complaints rose back to the top of the consumer complaint list and is once again the number one complaint received by the FTC.[7]

9. In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies ("CRA"), § 1681i, and their furnishers of information, § 1681s-2(b), must follow when consumers dispute the accuracy of the information reported in their credit reports. *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5).

10. Specifically, furnishers must satisfy five duties after receipt of notice of a consumer dispute from a CRA. 15 U.S.C. § 1681s-2(b)(1)(A-E).

11. The FCRA also "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

12. Thus, the FCRA holds furnishers of information, like Defendant ProCollect, Inc. here, responsible for taking reasonable steps to correct a consumer's credit report once she brought the identity theft claim to the CRA's attention. *See Sloane v. Equifax Info. Services, LLC*, 510

---

[5] https://archives.fbi.gov/archives/news/stories/2004/october/preventidt_102104 Last visited November 2, 2021.

[6] https://www.ftc.gov/news-events/press-releases/2016/03/ftc-releases-annual-summary-consumer-complaints Last visited November 2, 2021.

[7] https://www.ftc.gov/reports/consumer-sentinel-network-data-book-2020 Last visited November 2, 2021.

F.3d 495, 506-07 (4th Cir. 2007) ("Of course, Equifax bore not responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct Suzanne's credit report once she has brought the theft to the company's attention.").

13. The CRA Defendants have been sued thousands of times under the FCRA wherein an allegations were made similar to Plaintiff's in this case.

14. Similarly, ProCollect has been the subject of hundreds of complaints made by consumers to the Better Business Bureau ("BBB").[8]  According to the BBB, ProCollect earned a 1 out of 5-star rating from consumers. *Id*.

15. Similarly, identity theft victims regularly complain to the Consumer Financial Protection Bureau ("CFPB"), attempts made by ProCollect on debts that are the result of identity theft.[9]

16. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

17. Notwithstanding thousands of consumer lawsuits and complaints, the sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar

---

[8] https://www.bbb.org/us/tx/dallas/profile/collections-agencies/procollect-inc-0875-19001914 Last visited November 2, 2021.

[9] https://www.consumerfinance.gov/data-research/consumer-complaints/search/?date_received_max=2021-10-30&date_received_min=2018-10-30&issue=Attempts%20to%20collect%20debt%20not%20owed•Debt%20was%20result%20of%20identity%20theft&page=1&searchField=all&searchText=procollect&size=25&sort=created_date_desc&tab=List Last visited November 2, 2021.

industry for the CRA Defendants and ProCollect's primary source of revenue – making and collecting on consumer loans.

18. For 2020, Equifax reported $ 4,127,500.00 in revenue.[10]

19. For 2020, Experian's parent corporation, Experian plc, reported $ 5,179,000.00 in revenue.[11]

20. ProCollect is a privately held corporation and reportedly generates approximately $ 3,400,000.00 per year.[12]

21. For 2020, Trans Union reported $ 2,792,500.00 in revenue.[13]

## JURISDICTION AND VENUE

22. This Court has jurisdiction pursuant to 28 U.S.C § 1331, in addition to 15 U.S.C. §§ 1681p and 1692k.

23. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district and division. Plaintiff disputed the inaccurate information from this judicial district and division and the defendants directed their communications to Plaintiff in this judicial district and division.

## PARTIES

---

[10] https://investor.equifax.com/sec-filings/all-sec-filings/content/0000033185-21-000025/0000033185-21-000025.pdf Last visited November 2, 2021.

[11] https://www.experianplc.com/media/news/2020/experian-full-year-results-fy20/ Last visited November 2, 2021.

[12] https://www.dnb.com/business-directory/company-profiles.pro_collect_inc.daef48834ac3eab51a6a5cc16fff160c.html Last visited November 2, 2021.

[13] https://investors.transunion.com/~/media/Files/T/Transunion-IR/annual-reports/2020/transunion-annual-report-2020-final.pdf Last visited November 2, 2021.

24. Plaintiff is an adult individual and a resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. §§ 1681a(c) and 1692a(3).

25. Defendant Equifax Information Services, LLC ("Equifax") does business in this judicial district and is a Georgia corporation with its principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a CRA as defined by 15 U.S.C. § 1681a(f).

26. Defendant Experian Information Solutions, Inc. ("Experian") does business in this judicial district and is an Ohio corporation with its principal place of business located at 475 Anton Blvd., Costa Mesa, California 92626. Experian is a CRA as defined by 15 U.S.C. § 1681a(f).

27. Defendant ProCollect is a Texas corporation with its principal place of business located at _____. ProCollect is a person who furnishes information to CRAs under FCRA, 15 U.S.C. § 1681s-2[14], and conducts substantial and regular business activities in this judicial district.

28. Defendant Trans Union, LLC ("Trans Union") does business in this judicial district and is a Delaware corporation with its principal place of business located at 555 W Adams St., Chicago, Illinois 60661-5753. Trans Union is a CRA as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

29. Plaintiff is a victim of identity theft.

30. In or around 2020, an impostor applied for and opened an apartment lease with McKinney Village Apartments.

31. Upon information and belief, some of the personal identifying information used in connection with the application for credit purportedly concerned Plaintiff.

---

[14] Plaintiff is making a claim against ProCollect under § 1681s-2(b). Plaintiff is not making a claim against said defendant under § 1681s-2(a).

32. Plaintiff did not apply for or authorize someone on his behalf to apply for a lease with the McKinney Village Apartments.

33. Plaintiff did not receive any goods, benefits or services from McKinney Village Apartments in connection with the Account.

13. ProCollect credit reported false information in connection with the fraudulent Account.

14. Thereafter, the CRA Defendants prepared consumer reports related to Plaintiff that included the inaccurate Account information, in addition to other accounts, PII and inquiries.

15. Equifax, Experian and Trans Union reported the Account as a derogatory account and as follows:

    a. Collection account beginning in September 2020; and,

    b. $ 380 Balance past due.

16. The above reported credit information is untrue.

17. The inaccurate information harms Plaintiff's credit reputation because the Account history does not accurately depict her credit history or creditworthiness, or both.

18. In or around 2020, Plaintiff reviewed her credit reports and discovered that the Account appeared on her files.

*Plaintiff's Experience with Equifax*

19. Beginning in 2020 or 2021, Plaintiff notified Equifax of the disputed information no less than four (4) times. In support, Plaintiff provided Equifax with signature exemplars and PII. She also supplied Equifax with proof of her identity and current mailing address, three different law enforcement agencies' case numbers and an identity theft report.

20. Notwithstanding, Equifax generated correspondence to Plaintiff that it was "unable to locate [Plaintiff's] file."

21. On at least one occasion, Equifax failed to delete the disputed information or send Plaintiff its dispute results, or both.

22. Alternatively, Equifax failed to consider all relevant information and perform a reasonable reinvestigation of the disputed information.

23. Equifax did not delete the disputed information after receipt of no less than three (3) disputes.

24. Equifax prepared consumer reports related to Plaintiff that included the inaccurate information, including but not limited to the disputed information.

25. Plaintiff also requested Equifax to provide her with his consumer disclosure on multiple occasions. Equifax did not send Plaintiff her file in response to her requests.

### *Plaintiff's Experience with Experian*

26. Plaintiff notified Experian of the disputed information no less than six (6) times between 2020 and 2021. In support, Plaintiff provided Experian with signature exemplars and PII. She also supplied Experian with proof of her identity and mailing address, three different law enforcement agencies' case numbers and an identity theft report.

27. On at least one occasion, Experian refused to reinvestigate or delete the disputed information.

28. Alternatively, Experian failed to consider all relevant information and perform a reasonable reinvestigation of the disputed information.

29. Experian refused to reinvestigate at least one of Plaintiff's disputes.

30. On at least three (3) occasions, Experian responded to Plaintiff and stated that the disputed Account would remain in her file.

31. Between 2020 and 2021, Plaintiff requested Experian to provide her with her consumer disclosure on multiple occasions. On at least one occasion, Experian did not send Plaintiff her file in response to her requests for her file.

32. Plaintiff notified Experian of her disputed and included, *inter alia*, an identity theft report. Upon information and belief, Experian did not block the disputed information after receipt of an identity theft report.

33. Experian prepared and continues to prepare consumer reports related to Plaintiff that includes inaccurate information, including but not limited to the disputed information.

34. Upon information and belief, Trans Union notified Experian that it deleted the Account from Plaintiff's file.

### *Plaintiff's Experience with Trans Union*

35. Plaintiff notified Trans Union of the disputed information no less than four (4) times between 2020 and 2021. In support, Plaintiff provided Trans Union with signature exemplars and PII. She also supplied Trans Union with proof of her identity and mailing address, three different law enforcement agencies' case numbers and an identity theft report.

36. On at least one occasion, Trans Union failed to reinvestigate or delete the disputed information.

37. Alternatively, Trans Union failed to consider all relevant information and perform a reasonable reinvestigation of the disputed information.

38. Trans Union failed refused to reinvestigate at least one of Plaintiff's disputes of the disputed information. Alternatively, Trans Union failed to send Plaintiff the dispute results on at least one occasion.

39. Plaintiff also requested Trans Union to provide her with her consumer disclosure during the two years preceding the date of Plaintiff's Complaint. Trans Union did not send Plaintiff her file in response to her request on at least one occasion.

40. Trans Union prepared consumer reports related to Plaintiff that include the inaccurate information, including but not limited to the disputed information.

### *The CRA Defendants Actions & Inactions in Response to Plaintiff's Disputes*

41. In response to Plaintiff's disputes, the CRA Defendants did not contact third parties, including but not limited to any law enforcement agencies concerning the accuracy of the disputed information.

42. The CRA Defendants also did not review underlying account documents related to the Account contained in Plaintiff's file or the subject of Plaintiff's disputes, or both, such as the application for credit.

43. The CRA Defendants did not conduct any handwriting analysis on Plaintiff's signature or the signature on the applications for the Account or disputed information, or both.

44. The CRA Defendants did not make a reasonable inquiry into the disputed information.

45. The CRA Defendants did not review all relevant information provided by Plaintiff.

46. At best, the CRA Defendants verified the false information simply parroting ProCollect's verification of Plaintiff's ownership of the Account.

47. The CRA Defendants failed to modify or delete all of the disputed information.

48. Despite Plaintiff's exhaustive efforts to date, the CRA Defendants have nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA.

### *Plaintiff's Experience with ProCollect*

49. ProCollect called Plaintiff in an attempt to collect on the Account.

50. Plaintiff disputed the inaccurate information to a CRA, including Equifax, Experian, and Trans Union.

51. Equifax, Experian, or Trans Union notified ProCollect of the disputed information.

52. ProCollect notified Equifax, Experian, or Trans Union that it verified the disputed information.

53. As a part of PrtoCollect's FCRA investigation, it did not:

    a. contact Plaintiff concerning the accuracy of the disputed information;

    b. contact third parties, including but not limited to law enforcement, concerning the accuracy of the disputed information;

    c. review underlying account documents, such as any applications for credit;

    d. conduct any handwriting analysis on Plaintiff's signature or the signatures associated with the account, and in its own records;

    e. make a reasonable inquiry into the disputed information, including a review of the identity theft report supplied by Plaintiff;

    f. review all relevant information provided by a CRA pertaining to the disputed information; or,

    g. modify or delete the false account information.

54. At best, ProCollect verified the Account information by confirming some of Plaintiff's PII related to the Account with some of the PII reported by the CRA who notified ProCollect of Plaintiff's dispute.

55. ProCollect notified at least one CRA that its reporting of the inaccurate information was accurate no less than two (2) times.

56. ProCollect did not conduct a reasonable investigation with respect to the disputed information.

57. As of result of the defendants' conduct, Plaintiff has suffered unique and distinct concrete and particularized injuries in the form of adverse credit action, harm to credit reputation and credit score, out-of-pocket expenses, interference with Plaintiff's normal and usual activities and emotional distress, including anxiety, frustration, embarrassment and humiliation.

58. At all times pertinent hereto, the defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendants herein.

59. At all times pertinent hereto, the conduct of the defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

60. The defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to the Plaintiff that are outlined more fully above and, as a result, the defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief as may be permitted by law for their violations of federal law.

## COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)

61.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

62.     Equifax negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i.

63.     Alternatively, Equifax willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i.

64.     As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

## COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Experian)

65.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

66.     Experian negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1, c-2 and i.

67.     Alternatively, Experian willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1, c-2 and i.

68.     As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

## COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Trans Union)

69. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

70. Trans Union negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i.

71. Alternatively, Trans Union willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i.

72. As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

## COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against ProCollect, 15 U.S.C. 1681s-2(b)(1)(A))

73. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

74. On multiple occasions within the past two years, by example only and without limitation, ProCollect failed to comply with the requirements of the FCRA, including Section 1681s-2(b)(1)(A), by failing to fully and properly investigate Plaintiff's disputes.

75. When Plaintiff disputed the fraudulent account with the CRAs, ProCollect used a dispute system named "e-OSCAR," which has been adopted by the CRAs and their furnisher customers, including ProCollect.

76. E-OSCAR is an automated system and the procedures used by the CRAs are systematic and uniform.

77. When a CRA receives a consumer dispute, it (usually via an outsourced overseas vendor, *e.g.*, Teleperformance) translates each dispute into an automated dispute verification ("ACDV") form.

78. Upon information and belief, the ACDV form is the method by which ProCollect has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

79. Upon information belief, ProCollect received no less than two (2) ACDV forms from CRAs notifying it of Plaintiff's disputes.

80. Moreover, the ACDVs supplied by the CRAs including documents supporting Plaintiff's claims, including but not limited to signature exemplars.

81. ProCollect understood the nature of Plaintiff's disputes when it received the ACDVs.

82. Upon information and belief, when ProCollect received ACDVs related to Plaintiff's disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the Account and repeated back the same information on the ACDV system that was previously reported to the CRAs.

83. Upon information and belief, when ProCollect receives a dispute through e-OSCAR, it does not conduct a substantive review of any sort to determine whether the information already in its computer is itself accurate.

84. As a result of ProCollect's failure to comply with the requirements of § 1681s-2(b)(1)(A), Plaintiff suffered distinct, concrete and particularized actual damages, described more fully above.

85. ProCollect's conduct in violating was willful, making it liable to Plaintiff for punitive for punitive and statutory damages in an amount to be determined pursuant to 15 U.S.C.

§ 1681n. In the alternative, ProCollect was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

### COUNT FOUR – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against ProCollect, 15 U.S.C. § 1681s-2(b)(1)(B))

86. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

87. On multiple occasions within the past two years, by example only and without limitation, ProCollect failed to comply with the requirements of the FCRA, including Section 1681s-2(b)(1)(B), by failing to review all relevant information provided to it by the CRAs.

88. As Plaintiff detailed in the previous Count, ProCollect has elected to use the e-OSCAR system for its FCRA disputes received through the CRAs.

89. ProCollect is aware of the meaning of the several dispute codes used by the CRAs in e-OSCAR.

90. ProCollect does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

91. ProCollect understood Plaintiff's disputes and that Plaintiff claimed the account did not belong to her.

92. ProCollect understood Plaintiff's disputes and that Plaintiff claimed the account was opened due to fraud.

93. ProCollect understood the nature of Plaintiff's disputes and that Plaintiff claimed she was a victim of identity theft.

94. As a result of Defendant's failure to comply with the requirements of Section 1681s-2(b)(1)(B), Plaintiff suffered distinct, concrete and particularized actual damages, described more fully above.

95. ProCollect's conduct in violating was willful, making it liable to Plaintiff for punitive for punitive and statutory damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, ProCollect was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

96. As a result of ProCollect's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

**COUNT FIVE – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(Against ProCollect, 15 U.S.C § 1692, *et seq*.)**

97. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

98. ProCollect furnished inaccurate information about the Account or Plaintiff, or both, to at least one CRA.

99. The above reporting of the inaccurate information to a CRA by ProCollect are "communications" relating to a "debt" as defined by 15 U.S.C. §§ 1692a(2) and 1692a(5) of the FDCPA.

100. Any alleged debts at issue (*e.g.,* the apartment lease) arose out of a transaction which was primarily for personal, family or household purposes.

101. ProCollect violated the FDCPA.

102. ProCollect's violations include, but are not limited to, violations of 15 U.S.C. §§ 1692e(2)(A), 1692e(8), 1692e(10) and 1692f, as evidenced by the following conduct:

    a. The false representation of the amount, character or legal status of a debt;

  b. Communicating or threatening to communicate to any person credit information which is known, or which should be known, to be false; and,

  c. Otherwise using false, deceptive, misleading, and unfair or unconscionable means to collect or attempt to collect a debt from the Plaintiff.

103. ProCollect's acts as described above were done with intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies relating to the Account for which were not owed by Plaintiff and were the result of fraud.

104. As a result of the above violations of the FDCPA, ProCollect is liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorney's fees and costs.

## JURY DEMAND

105. Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against the defendants as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and,
4. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and,

4. Attorneys' fees and costs.

On the Third Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and,
4. Attorneys' fees and costs.

On the Fourth Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and,
4. Attorneys' fees and costs.

On the Fifth Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and,
4. Attorneys' fees and costs.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
TX BAR NO. 24088777
**THE ADKINS FIRM, P.C.**
1025 Westhaven Blvd., Suite 220
Franklin, Tennessee 37064
T:  (615) 370.9659
F:  (205) 208.9632
E:  MicahAdkins@ItsYourCreditReport.com
*COUNSEL FOR PLAINTIFF*
*SHELLEY HAMMOND*